**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHARLES ALONGI, SHARI ALONGI, and
ANTHONY ALONGI,

       Plaintiffs,

v.                                 Case No. 12-13374

BOMBARDIER RECREATIONAL
PRODUCTS, INC., BRP-US, INC., d/b/a/
SEA-DOO, and CHARTIER HOLDINGS,
INC., d/b/a/ GRACE PERFORMANCE
MARINE,

       Defendants.

_____/

**OPINION AND ORDER (1) GRANTING DEFENDANTS BOMBARDIER
RECREATIONAL PRODUCTS, INC.'S AND BRP U.S., INC.'S MOTION FOR
SUMMARY JUDGMENT AND (2) GRANTING IN PART AND DENYING IN PART
DEFENDANT CHARTIER HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiffs Charles Alongi, Shari Alongi, and Anthony Alongi filed products liability

and breach of warranty claims against Defendants Bombardier Recreational Products,

Inc., BRP-US, Inc., and Chartier Holdings, Inc.  Plaintiffs' claims arise from a 2008

speed boating accident that cost the life of a passenger and resulted in the criminal

conviction of Anthony Alongi, the boat's driver.  Defendants Bombardier Recreational

Products, Inc. and BRP-US, Inc. (collectively, "Bombardier") moved for summary

judgment, and Defendant Chartier Holdings, Inc. filed a separate summary judgment

motion.  Both motions have been fully briefed, and a hearing is unnecessary.  *See* E.D.

Mich. LR 7.1(f)(2).  For the following reasons, the court will grant Bombardier's motion.

The court will grant in part and deny in part Chartier's motion.

## I. BACKGROUND

The facts are tragic and in many areas contested (for example, one or more contemporary affidavits have been produced that contradict historic statements in various ways). In many critical areas, however, as explained below, there are no material disputes.

On July 24, 2008, Plaintiffs Charles Alongi and Shari Alongi purchased a fifteen-foot 2008 Bombardier 150 Speedster (the "Jet Boat") from Defendant Chartier Holdings, Inc. ("Chartier"). (Def.'s Mot. Exs. B & C, Dkts. # 23-3 & # 23-4.) Chartier was an authorized dealer for Defendants Bombardier Recreational Products, Inc. and BRP-US, Inc. (collectively, "Bombardier") which manufactured the Jet Boat. Plaintiffs allege that the Jet Boat began experiencing what they characterize as a mechanical problem shortly after its purchase. An "error code" message would appear on the Jet Boat's dashboard indicating high temperature exhaust, a beeper would sound, and the Jet Boat's rpms would reduce to about 2,600. Plaintiffs noticed this function after about five hours of use. (Defs.' Mot. App. A-14 at 133, Dkt. # 26-1.) Plaintiffs claim this happened several times between July 24, 2008, and August 4, 2008: Charles testified during Plaintiff Anthony Alongi's criminal trial that it happened "at least three to four [or] maybe five" times from the date of purchase to the date of the accident on August 5, 2008, (*id.*), although Charles testified during deposition that he recalled that the warning activated "three or four" times when he was operating, (Defs.' Mot. App. H-05 at 243, Dkt. # 26-1), and an additional "three or four times" when Anthony was operating the boat, (*id.* at 244). Charles said also that "when it happened to me, I had no issues of losing steering and losing control out in open water." (*Id.* at 244.)

2

An audible alarm, an error code visual display, and an automatic reduction in engine speed all appear to have been a part of the design in reaction to the sensing of excessive exhaust heat.

In the early evening of a hot August 5, 2008, Anthony, then age seventeen, arrived at his parents' canal-side home from his trash collection job, changed his clothes, and took the Jet Boat out on the water to meet friends at a shallow-water gathering spot known as Munchie's Bay on Lake St. Clair's Bouvier Bay. A party had been ongoing at that location and it included—or perhaps was focused upon—drinking. Anthony, far below the legal drinking age but almost certainly intoxicated,[1] and five friends, all of whom had been drinking most of the afternoon, loaded themselves into the Jet Boat.[2] With Anthony piloting, they proceeded from the area of Munchie's Bay towards Anthony's home on the canal. Before the final run toward home, there was some "racing around" at high speed, with Anthony executing two or three 360-degree spins on the lake. Plaintiffs allege that while Anthony was approaching the canal, the high temperature exhaust warning again occurred, the alarm sounded, and the Jet Boat

---

[1] Anthony, while being treated at a hospital immediately following the accident, said that he had consumed "a couple of beers." (Defs.' Mot. App. A-03 at 24, Dkt. # 26-1.) His most recent affidavit says he had not consumed alcohol before leaving home, that he was on Munchie's Bay for only forty-five minutes, and that he drank "one to two" beers while on the Bay. (Defs.' Mot. App. H-03 at 227, Dkt. # 26-1.) To the paramedic who first treated him, however, Anthony smelled "heavily" of alcohol, (*id.* App. A-02 at 13, Dkt. # 26-1), and the toxicologist at his trial extrapolated his blood alcohol percentage at the time of the allision to be about 0.15, (*id.* App. A-05 at 40, Dkt. # 26-1).

[2] Six occupants exceeds by 50% the boat's four-person maximum capacity. (*Id.* App. J at 280, Dkt. # 26-1.) The vessel's total weight capacity was 715 pounds, (*id.*), a limit that was far exceeded: one of the six occupants alone weighed 325 pounds, (*id.* App. A-09 at 89, Dkt. # 26-1).

3

refused to respond to Anthony's attempts to gain control. More than one passenger testified that Anthony panicked, suddenly cut the throttle, and, as a natural consequence, lost the steering capability that only the engine thrust provides. The Jet Boat allided with the corner of a steel seawall at a high rate of speed,[3] ejecting four of the six occupants, and killing passenger Chad Rhodes. Anthony was jury-convicted of negligent homicide.

Plaintiffs, on July 31, 2012, filed products liability and breach of warranty claims against Defendants. In addition to alleging manufacturing defects, Plaintiffs claim that the Jet Boat was defectively designed because it lacked rudders and "off-throttle steering" which, they say, would have enabled Anthony to control the Jet Boat when it began to power down. Defendants moved for summary judgment.

## II. STANDARD

---

[3] Although Anthony testified at his deposition that his speed was "about" ten miles per hour ("mph")—a modest speed closer to that of a slow, long-distance runner than a sprinter; a speed that any decent runner can achieve—and although his estimate matched the opinion his reconstruction witness provided, two independent witnesses at the scene as well as all four surviving passengers in the boat estimated the speed between twenty-five and forty mph. (Defs.' Mot. App. A-06 at 46, Dkt. # 26-1; *id.* App. A-07 at 54, Dkt. # 26-1; *id.* App A-09 at 89, Dkt. # 26-1; *id.* App. A-10 at 96-97, Dkt. # 26-1; *id.* App. A-11 at 111, Dkt. # 26-1; *id.* App. A-12 at 117, Dkt. # 26-1.) Most said it was "too fast" for an approach to the canal. One passenger testified he knew the boat was in trouble because "[n]o one goes into a canal that fast." (*Id.* App. A-10 at 97, Dkt. # 26-1.) Contrary to his recent affidavit, Anthony that night said to a Sheriff's Detective that he was "coming in [to the seawall] on plane" at "three-quarter[s] throttle," (*id.* App. A-08 at 62, Dkt. # 26-1), an estimate electronically confirmed, indeed amplified, by a technician's interpretation of the "B.U.D.S." Diagnostic Software report that revealed the throttle to have been at 82.5%, or "almost wide open," (*id.* App. A-13 at 125, Dkt. # 26-1). But the paramedic treating Anthony at the scene received the plainest explanation: Anthony simply said he had been going "pretty fucking fast." (*Id.* App. A-02 at 15, Dkt. # 26-1.)

4

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. When deciding summary judgment motions, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita*, 475 U.S. at 587). The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson*, 477 U.S. at 249).

### III. DISCUSSION

5

Plaintiffs allege eleven counts against Defendants: nine under state law and two under federal law.  Plaintiffs' complaint claims that the court has subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, and federal question, 28 U.S.C. § 1331.  Diversity jurisdiction requires not simply some, but *complete* diversity of citizenship between parties.  28 U.S.C. § 1332(a)(1).  Plaintiffs' complaint alleges that complete diversity exists, but at the same time acknowledges that both Plaintiffs and Defendant Chartier are Michigan citizens.  (Pls.' Compl. ¶ 1, 5, 7.)  The court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 where congruity, rather than diversity, of citizenship is alleged among Plaintiffs and Chartier.

The court does, however, have federal question jurisdiction over Plaintiffs' two counts alleged under federal statute: the Federal Boat Safety Act, 46 U.S.C. § 4301 *et seq.* (Count 2), and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count 11).  The court may exercise supplemental jurisdiction over the nine state-law claims if "they form part of the same case or controversy" as the federal-law claims.  28 U.S.C. § 1367(a).  The state-law claims satisfy this requirement because all of the counts concern the sale of an allegedly defectively manufactured and designed Jet Boat.  The court may decline to exercise supplemental jurisdiction over any state-law claim if:

(1)  the claim raises a novel or complex issue of State law,
(2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3)  the district court has dismissed all claims over which it has original jurisdiction, or
(4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  However, none of these circumstances apply in this case, and the court exercises supplemental jurisdiction over Plaintiffs' state-law claims.

6

Each claim will be discussed in turn.

## A. Michigan Consumer Protection Act (Count 1)

Plaintiffs claim that "the design, manufacture, marketing, and sale [of] the Jet Boat" violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903. The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." § 445.904(1)(a). "[T]he relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007) (citation and quotation marks omitted).

In *Liss*, the plaintiffs contracted with a residential home building company to construct a home. *Id.* at 516. When the construction was completed late and not in a workman-like manner, the plaintiffs sued, alleging, among other causes of action, that the company violated the MCPA. *Id.* The Michigan Supreme Court concluded that the "general transaction" at issue was contracting to build a residential home. *Id.* at 520. The court recognized that the Michigan Occupational Code, Mich. Comp. Laws § 339.101 *et seq.*, defined a "residential home builder" as an individual who engages in construction for compensation. *Id.* at 521. Furthermore, the court noted that residential home builders were regulated by the Residential Builders' and Maintenance and Alteration Contractors' Board. *Id.* at 520. The court therefore concluded that contracting to build a residential home is a transaction "specifically authorized" by law. *Id.* at 521.

7

Following the reasoning in *Liss*, the court finds the "general transaction" at issue—the design, manufacturing, and sale of the Jet Boat—is "specifically authorized" by law.  The Jet Boat is a type of recreational vessel.  The Federal Boat Safety Act ("FBSA"), 46 U.S.C § 4301 *et seq.*, regulates the manufacture of recreational vessels. § 4302.  Under the FBSA, the Secretary of Homeland Security:

> may prescribe regulations—
>
> (1) establishing minimum safety standards for recreational vessels and associated equipment, and establishing procedures and tests required to measure conformance with those standards . . . ;
>
> (2) requiring the installation, carrying, or use of associated equipment . . . on recreational vessels . . ., and prohibiting the installation, carrying, or use of associated equipment that does not conform with safety standards established under this section; and
>
> (3) requiring or permitting the display of seals . . . or other devices certifying or evidencing compliance with safety regulations and standards of the United States Government for recreational vessels and associated equipment.

§ 4302(a).  A person may not "manufacture, construct, assemble, sell or offer for sale, . . . a recreational vessel, associated equipment, or component of the vessel or equipment" unless it conforms with the prescribed regulations and does not contain a defect "creating a substantial risk of personal injury to the public."  § 4307(a)(1)(A)(i-ii). Furthermore, the Secretary can direct a manufacturer to provide notification if the Secretary "decides that the recreational vessel or associated equipment contains a defect related to safety or fails to comply with an applicable regulation."  § 4310(f).  The FBSA "specifically authorizes" the design, manufacture, and sale of recreational vessels such as the Jet Boat.  Accordingly, the exemption under Michigan Compiled Laws

8

§ 445.903(1)(a) applies to Defendants, and summary judgment is granted on Plaintiffs'

MCPA claim.

### B. Federal Boat Safety Act (Count 2)

Plaintiffs claim that Bombardier violated the Federal Boat Safety Act, 46 U.S.C.

§ 4301 *et seq.* Pursuant to § 4303(a), the Secretary of Homeland Security delegated its

regulatory authority under the FBSA to the Commandant of the United States Coast

Guard ("USCG"). 33 CFR 1.05-1. The FBSA authorizes the USCG to require the recall

of any recreational boat that contains a defect "creating a substantial risk of personal

injury to the public." 46 U.S.C. §§ 4307(a)(1)(A)(ii); 4310(f). Plaintiffs claim that the

USCG adopted SAE J2608 which requires "personal watercraft" manufactured in 2006

or later to have rudders and off-throttle steering. (Pls.' Compl. ¶ 44, Dkt. # 1.) Under

§ 4310(b):

> If a recreational vessel or associated equipment has left the place of
> manufacture and the recreational vessel manufacturer discovers or acquires
> information that the manufacturer decides, in the exercise of reasonable and
> prudent judgment, indicates that a recreational vessel or associated
> equipment subject to an applicable regulation prescribed under section 4302
> of this title either fails to comply with the regulation, or contains a defect that
> creates a substantial risk of personal injury to the public, the manufacturer
> shall provide notification of the defect or failure of compliance as provided by
> subsections (c) and (d) of this section within a reasonable time after the
> manufacturer has discovered the defect.

Plaintiffs argue that Bombardier violated § 4310(b) by failing to provide notification that

the Jet Boat did not conform with the industry standards specified in SAE J2608.

There are two problems with Plaintiffs' arguments. First, Sixth Circuit law

suggests that the FBSA does not allow a private cause of action for violating reporting

requirements. *See Daniels v. Am. Honda Motor Co., Inc.*, 980 F.2d 729, at *4 (6th Cir.

9

Dec. 7, 1992) (table) (holding that "the Consumer Products Safety Act does not recognize a private cause of action for violations of the Act's reporting requirements") (collecting authority).  Second, and more fundamentally, SAE J2608 does not apply to this fifteen-foot-long watercraft.  SAE J2608 regulates "personal watercraft" defined as a vessel less than 13' in length and "designed to be operated by a person or persons sitting, standing or kneeling on the craft rather than in the confines of the hull."  (Def.'s Mot. Ex. D at 2, Dkt. # 23-5.)  The Jet Boat, however, is 15' 4" in length, equipped with four permanent, cushioned seats, and intended to be operated by a person sitting in one of those seats "in the confines of the hull."  (Defs.' Mot. App. J at 280, Dkt. # 26-1.) The Jet Boat does not constitute a "personal watercraft" under SAE J2608, and Bombardier was not required to manufacture it in accordance with SAE J2608. Plaintiffs blithely ignore the facial impact of the regulation, arguing that the length of the Jet Boat is "irrelevant" in this analysis simply because SAE J2608 was designed to address flaws in "jet powered vessels," and as the Jet Boat is jet-powered, the regulation applies.

Plaintiffs' claim utterly fails at the threshold, and the court will grant summary judgment on Plaintiffs' FBSA claim.

### C. Negligence (Counts 3 & 6)

Plaintiffs allege negligence against Bombardier (Count 3) and Chartier (Count 6). Defendants argue that Plaintiffs' negligence claims are barred by the statute of limitations.  Personal injury claims are subject to a three-year limitations period from the time of the injury.  Mich. Comp. Laws § 600.5805(10).  Section 600.5827 states:

> [T]he period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

Plaintiffs maintain that § 5833 governs the time when the claim accrues. Section 5833 provides when a claim accrues for a cause of action alleging breach of a warranty of quality or fitness. Counts 3 and 6 of Plaintiffs' complaint explicitly allege that Defendants were negligent or, in the alternative, grossly negligent, in the design and manufacture of the Jet Boat. (Pls.' Compl. ¶¶ 47-54, 63-71, Dkt. # 1.) Plaintiffs assert breach of express and implied warranties in separate counts. (*See* Counts 4, 5, 7, & 9.) Therefore, § 5833 is not applicable, and § 5805(10) governs when Plaintiffs' negligence claims accrue for statute of limitations purposes.

Plaintiffs argue that the common-law discovery rule applies in determining when their negligence claims accrue. Under the common-law discovery rule, the statutory period of limitations is tolled when a plaintiff could not have reasonably discovered the elements of a cause of action within the limitations period. *See Trentadue v. Buckler Automatic Law Sprinkler Co.*, 738 N.W.2d 664, 666 (Mich. 2007). The Michigan Supreme Court has rejected the common-law discovery rule, holding that the plain language of Michigan Compiled Laws § 600.5827 "alone controls" the period of limitations. *Id.* at 667.

The term "wrong," in § 600.5827, refers to "the date on which the plaintiff was harmed by the defendant's negligent act, as opposed to the date the defendant acted negligently." *Chase v. Sabin*, 516 N.W.2d 60, 63 (Mich. 1994). A negligence claim accrues "when all of the elements of the cause of action have occurred and can be

11

alleged in a proper complaint." *Stephens v. Dixon*, 536 N.W.2d 755, 758 (Mich. 1995) (citations and internal quotations omitted).  A negligence cause of action consists of four elements:

> (1) The existence of a legal duty by defendant toward plaintiff.
>
> (2) The breach of such duty.
>
> (3) A proximate causal relationship between the breach of such duty and an injury to the plaintiff.
>
> (4) The plaintiff must have suffered damages.

*Id.* (citations omitted).

The Jet Boat accident occurred on August 5, 2008.  The "wrong" was done on that date as Plaintiffs were harmed by Defendants' alleged negligent act of defectively designing and manufacturing the Jet Boat.  All of the elements of Plaintiffs' negligence claim existed when the accident occurred.  Therefore, Plaintiffs' negligence claim accrued on August 5, 2008, and the statute of limitations expired three years later on August 5, 2011.  Plaintiffs filed their complaint almost a year later, on July 31, 2012.

Plaintiffs' negligence claims are time-barred, and the court will grant summary judgment.

### D. Breach of Express Warranty (Counts 4 & 9)

Plaintiffs allege breach of express warranty against Bombardier (Count 4) and against both Bombardier and Chartier (Count 9).  Bombardier argues that Plaintiffs' express warranty claims fail because Plaintiffs and Bombardier never entered into a contract.  Chartier concedes that it contracted with Plaintiffs, but maintains that the express warranty claim is time-barred under the statute of limitations.

12

<u>i. Breach of Express Warranty Claim - Bombardier</u>

Michigan Compiled Laws § 440.2313 limits express warranties "to statements, descriptions, representations, samples, and models that are 'made part of the basis of the bargain.'" *Heritage Res. Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 342 (Mich. Ct. App. 2009) (quoting Mich. Comp. Laws § 440.2313). "An express warranty may be created only between a seller and a buyer, and any such express warranty becomes a term of the contract itself." *Heritage*, 774 N.W.2d at 342. "[W]here there is no contract, and therefore no 'bargain,' there can be no express warranty under [Michigan Compiled Laws] § 440.2313." *Id.* When a remote purchaser does not have a contract with a manufacturer, then the manufacturer, as a matter of law, "could not have made any express warranties directly to [the remote purchaser]." *Id.*; *see also id.* at 343 n.12 ("Our research has revealed no modern case in which the [Michigan] Supreme Court has ever held that privity of contract is unnecessary to enforce an express warranty. Indeed, because an express warranty is a term of the contract itself, we conclude that privity of contract is necessary for a remote purchaser to enforce a manufacturer's express warranty.") (internal citations and emphasis omitted).

Plaintiffs purchased the Jet Boat from Chartier and concede that they did not contract with Bombardier. In the absence of a contract, Bombardier did not make any express warranties to Plaintiffs. As there is no privity of contract between Plaintiffs and Bombardier, Plaintiffs cannot bring a breach of express warranty claim against Bombardier. The court will grant summary judgment on all breach of express warranty claims alleged against Bombardier.

13

<u>ii. Breach of Express Warranty Claim - Chartier</u>

As Chartier acknowledges, there was privity of contract between it and Plaintiffs. Accordingly, Plaintiffs have the necessary footing to bring a breach of express warranty claim. Yet Plaintiffs do not clearly specify which express warranties Chartier is alleged to have breached. Count 9 of Plaintiffs' complaint alleges that both Defendants made express warranties "orally and in writing" and provides a list of nine "express and implied" warranties that were breached, without saying which were implied and which were made expressly. (Pls. Compl. ¶¶ 83-84, Dkt. # 1.) The complaint also notes that this list is non-exhaustive. (*Id.* ¶ 84.)

The manufacturer's warranty, found in the Jet Boat's Operator's Guide, "warrants its new and unused [Jet Boat] sold by authorized BRP dealers . . . from defects in material and workmanship." (Defs.' Mot. App. K at 283, Dkt. # 26-1.) The express warranty covers only manufacturing defects. After reviewing Plaintiffs' list of express and implied warranties, the court identifies only two that fall under the scope of the manufacturer's express warranty:

1. The Jet Boat was free from defective parts and workmanship.

2. That the electronic, engine and exhaust systems of the Jet Boat were properly designed, manufactured and tested.

(Pls' Compl. ¶ 84(c, i), Dkt. # 1.)

Chartier argues that Plaintiffs' breach of express warranty claim is barred by the statute of limitations. Michigan law provides a four-year statute of limitations from the time a cause of action accrues for a breach of contract for sale. Mich. Comp. Laws § 440.2725(1).

14

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

§ 440.2725(2). "If a seller expressly warrants a product for a specified number of years, it is clear that, by this action alone, he is explicitly warranting the future performance of the product or goods for that period of time. *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 820-21 (6th Cir. 1978). Under § 440.2725(2), the cause of action accrues when the plaintiff "discovered or should have discovered that the [product] was defective, so long as the defect arose within the warranty period." *Id.* at 821.

The manufacturer's warranty had a one-year duration. (Defs.' Mot. App. K at 284, Dkt. # 26-1.) Plaintiffs also purchased Chartier's forty-eight month extension of the manufacturer's warranty. (Pls.' Resp. Ex. B at 2, Dkt. # 24-3.) Bombardier argues that Chartier was unauthorized to grant such an extension. The express warranty states:

> Neither the distributor, any BRP dealer nor any other person has been authorized to make any affirmation, representation or warranty regarding the product, other than those contained in this limited warranty, and if made, shall not be enforceable against BRP.

(Defs.' Mot. App. K at 284, Dkt. # 26-1.) Chartier's extension of the manufacturer's warranty does not make any affirmation, representation, or warranty of the Jet Boat. The extended warranty does not alter the manufacturer's warranty's limitations of liability, but simply extends it for three years beyond the original one-year period. Accordingly, the extended warranty, "made part of the basis of the bargain," became a term of the contract between Chartier and Plaintiffs. As the extension expressly

15

warranted the Jet Boat from defects in material and workmanship for 48 months, the express warranty extended to future performance for that time period.  *See Standard Alliance*, 587 F.2d at 821 ("[The manufacturer] expressly warranted the machine for a period of one year.  Thus, we hold that the warranties explicitly extended to future performance for a period of one year.").[4]

A four-year period of limitations applies to Plaintiffs' breach of express warranty claim against Chartier.  Mich. Comp. Laws § 440.2725(1).  As Plaintiffs filed their complaint on July 31, 2012, the breach of express warranty claim is time-barred if Plaintiffs discovered or should have discovered a defect in the Jet Boat's electronic, engine, and exhaust systems on or before July 30, 2008.

Plaintiffs purchased the Jet Boat on July 24, 2008 and began experiencing what they characterize as a mechanical problem with the Jet Boat after it had been driven for five hours.  (Defs.' Mot. App. A-14 at 133, Dkt. # 26-1.)  An "error code" would appear on the dashboard, indicating "high exhaust temperature."  (*Id.* at 132.)  The Jet Boat would reduce its rpms and a beeper would sound.  (*Id.* at 133.)  Plaintiffs claim this happened between six and eight times between the date of the purchase and the date of the accident on August 5, 2008.  (Defs.' Mot. App. H-05 at 243-44, Dkt. # 26-1.)  On August 4, 2008, while picking up the Jet Boat's title and registration from Chartier,

---

[4] The manufacturer's warranty contains an exception to the one-year duration period.  The warranty expressly warrants "the deck and hull fiberglass structure" for five years.  (Defs.' Mot. App. K at 284, Dkt. # 26-1.)  However, this five-year warranty covers only the hull and fiberglass structure, and Plaintiffs have not alleged that those materials were defectively manufactured.  The only parts Plaintiffs claim to have been defective were "the Jet Boat's electronic, engine and exhaust systems," (Pls.' Compl. ¶¶ 56, 84(i), Dkt. # 1), so the five-year hull warranty does not affect the determination of when Plaintiffs' breach of express warranty claim accrued.

16

Plaintiffs informed Chartier about their experience.  (*Id.* at 134.)  Plaintiffs claim that Chartier stated that the problem generating the alert "was a high temperature exhaust" and "assured [Plaintiffs] there was no problem with the boat."  (*Id.*)  On August 5, 2008, during the course of driving the boat before the accident, Plaintiffs claim that the error code indicating high exhaust temperature sounded, and the Jet Boat reduced its rpms. (Pls.' Compl. ¶¶ 26, 28-29, Dkt. # 1.)

At the latest, it is clear that Plaintiffs knew of the Jet Boat's allegedly defective exhaust system on the date of the accident.  It is unclear, however, when Plaintiffs first began experiencing the exhaust system alarms.  While the high temperature alerts occurred six to eight times, at least, between July 24 and August 4 in the experience of Charles and Anthony, and Charles testified that it began sometime after a short break-in period of about five hours of use, neither party has offered evidence to establish on what date the situation *first* occurred.  "The burden of establishing a bar imposed by a statute of limitations is normally on the party asserting the defense."  *Forest City Enters., Inc. v. Lemon Oil Co.*, 577 N.W.2d 150, 159 (Mich. Ct. App. 1998).  Chartier has not met this burden.  There is a genuine dispute of fact about whether, before July 31, 2008, Plaintiffs knew, or should have known, of what they allege to be the Jet Boat's exhaust system defect.

For purposes of this motion only, drawing all reasonable inferences in favor of the non-moving party, *Matsushita*, 475 U.S. at 587, there is a material dispute about the earliest date on which Plaintiffs' breach of express warranty claim against Chartier accrued, and Plaintiffs' claim is not time-barred.

17

However, it appears to the court that Plaintiffs may not have offered evidence to establish a *prima facie* case of breach of express warranty for the allegedly defectively manufactured exhaust system.  A seller other than the manufacturer, such as Chartier, can be held liable for a breach of an express warranty if "the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm."  Mich. Comp. Laws § 600.2947(6)(b).  First, it is unclear whether there is a dispute of fact regarding whether the Jet Boat's exhaust system was properly manufactured.  While Plaintiffs assert that the exhaust system malfunctioned numerous times prior to the accident and during the accident, the court cannot identify any evidence, besides Plaintiffs' conclusory testimony, that establishes the exhaust system did, in fact, *mal*function.  Indeed, from all the evidence of record, it appears that the Jet Boat simply operated as designed and powered itself down to about 2,600 rpms when high exhaust heat was detected, for example, upon being overloaded with weight and driven at high speeds.  While it must be accepted for this motion that the high-heat alert and power-down functions happened essentially as Anthony has described it—and doing so ignores the contrary conclusion from the computer diagnostic showing 82% "almost wide-open" throttle, as well as Anthony's own statements about being "on plane" at about 3/4 throttle—and that from his perspective it happened unexpectedly, there appears to be no evidence supporting the idea that there was an engine or exhaust function that occurred when it was not supposed to.  In other words, the court is left wondering how Plaintiffs have demonstrated that there was not a high exhaust heat situation detected leading to the automatic powering down as Anthony described it.

18

Second, the court is not convinced that there is a genuine dispute of fact regarding whether the defectively manufactured exhaust system was a proximate cause of Plaintiffs' injuries.  Proximate cause "normally involves examining the foreseeability of consequences."  *Helmus v. Mich. Dept. of Transp.*, 604 N.W.2d 793, 797 (Mich. Ct. App. 1999).  "A proximate cause is one that is a 'natural and probable consequence' of one's conduct, a consequence that an ordinary, prudent person ought to have foreseen."  *Dillon v. Tamminga*, 236 N.W.2d 718, 720 (Mich. Ct. App. 1975).  If the exhaust system sensed an overheating situation and caused the Jet Boat to power down in response, at the moment it was traveling at a high speed directly toward an immovable obstruction such as a seawall, then it was foreseeable that the Jet Boat would allide with the seawall *given* the lack of off-throttle steering.  But Plaintiffs are barred from bringing their design defect claim,[5] and the court is uncertain whether there is a dispute of fact regarding how the exhaust system's alleged malfunction proximately caused Plaintiffs' injuries.

The parties did not address these significant legal issues in their briefs. Accordingly, the court will withhold ruling on whether Plaintiffs' breach of express warranty claim against Chartier survives summary judgment.  Instead, the court will direct the parties to submit supplemental briefing on (1) whether and how Chartier breached its express warranty that the electronic, engine, and exhaust systems were

---

[5] Under Michigan law, a plaintiff may bring a design defect claim under the theories of negligence or breach of the implied warranty of merchantability.  *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1984).  As found in Section C above, Plaintiffs' negligence claims are time-barred.  As the court will establish in Section E below, Defendants validly disclaimed all implied warranties under Michigan law.

19

properly manufactured; and (2) whether and how the allegedly improperly manufactured systems were, without reference to the presence or absence of off-throttle steering design, a proximate cause of Plaintiffs' injuries. *See* Fed. R. Civ. P. 56(f)(3). As plainly set forth herein, associated with these two issues is the underlying fundamental question of how, exactly, Plaintiffs assert that the engine and/or exhaust systems *mal*functioned, as opposed to simply *functioned*. Is it Plaintiffs' contention that the engine exhaust did not, in fact, overheat on August 5, 2008? Or do Plaintiffs claim that the exhaust should not be capable of overheating even under the conditions[6] undisputedly created by the operator in this instance? With what facts would either such claim be supported? Accepting a factual claim, if Plaintiffs offer it, that the boat's sensors correctly detected a high exhaust heat situation and powered the engine down to a lower level, is it Plaintiffs' theory that the engine exhaust system was manufactured in a way that caused it to function *improperly* in so doing? If so, why, how, and based on what facts? Or, alternatively, accepting a factual claim, if Plaintiffs offer it, that the boat's sensors incorrectly detected a high exhaust heat situation, how do Plaintiffs say that the mistakenly triggered powering-down function proximately caused the boat to hit the wall? And, how does this represent an alleged defect in the manufacturing of the vessel as opposed to an alleged defect in the design of the engine, exhaust, and heat sensing systems?

### E. Breach of Implied Warranties (Counts 7 & 9)

[6] Carrying two occupants more than the maximum four representing more than a 60% overload of the maximum weight capacity; high speed operation involving a number of 360-degree spinouts; and approaching the fateful moment "almost wide-open," at 82% of full throttle.

20

Plaintiffs allege breach of the implied warranties of merchantability and fitness for a particular purpose against Chartier (Count 7) and Defendants jointly (Count 9). Defendants argue that the manufacturer's warranty validly disclaims all implied warranties. The implied warranties of merchantability and fitness may be disclaimed by the seller under Michigan Compiled Laws § 440.2316. *Heritage Res. Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 345 (Mich. Ct. App. 2009). Section 440.2316 provides, in part:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

§ 440.2316(2). Section § 440.1201(10) defines "conspicuous":

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. . . . Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . . Whether a term or clause is "conspicuous" or not is for decision by the court.

The Jet Boat's express warranty, under the "Limitations of Liability" section, in all capital letters states:

> THIS WARRANTY IS EXPRESSLY GIVEN AND ACCEPTED IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(Defs.' Mot. App. K at 284, Dkt. # 26-1.) The manufacturer's warranty explicitly disclaims the warranties of merchantability and fitness for a particular purpose. There cannot be a dispute that the disclaimer was conspicuous, written in all capital letters within the body of the warranty such that a reasonable person ought to have noticed it.

21

Accordingly, the implied warranties of merchantability and fitness for a particular purpose were validly disclaimed, and the court will grant summary judgment on Plaintiffs' claims of breach of implied warranties under Counts 7 and 9.

### F. Magnuson-Moss Warranty Act (Count 11)

Plaintiffs allege that Defendants violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, by breaching express and implied warranties and not remedying the defects within a reasonable time and without charge.  15 U.S.C. § 2304(a)(1).  "The MMWA is a remedial statute designed to protect consumers against deceptive warranty practices."  *Anderson v. Gulf Stream Coach Inc.*, 662 F.3d 775, 780 (7th Cir. 2011).  The MMWA provides relief for "a consumer who is damaged by the failure of a supplier, warrantor, or other service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15. U.S.C. § 2310(d)(1).

### i. Express Warranty

As the court previously established, Bombardier did not make any express warranty to Plaintiffs.  Therefore, the court will grant Bombardier summary judgment on Plaintiffs' MMWA claim that Bombardier breached an express warranty.

Chartier, on the other hand, did make an express warranty to Plaintiffs.  The MMWA does not provide a statute of limitations.  "It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand."  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991).  The most analogous state statute is Michigan Compiled Laws § 440.2725

22

which, for a breach of contract for sale, provides a four-year statute of limitations from the time a cause of action accrues.  Mich. Comp. Laws § 440.2725(1).  The court has found that Plaintiffs' breach of express warranty claim against Chartier is not time-barred, but has requested supplemental briefing on whether Chartier breached its express warranty and whether the breach was a proximate cause of Plaintiffs' injuries. As Plaintiffs' ability to seek relief under the MMWA for Chartier's breach of express warranty (Count 11) is contingent on whether the state-law breach of express warranty claim (Count 9) survives summary judgment, the court will withhold ruling on whether summary judgment is warranted for Plaintiffs' MMWA claim that Chartier breached its express warranty.

### ii. Implied Warranty

Defendants have validly disclaimed all implied warranties under state law.  Under the MMWA, however, "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product."  15 U.S.C. § 2308(a).  The court has already held that Bombardier did not make an express warranty to Plaintiffs.  Therefore, the court will grant summary judgment on Plaintiffs' claims of breach of implied warranties against Bombardier under the MMWA.

Chartier, on the other hand, gave an express warranty to Plaintiffs with respect to defects in the Jet Boat's material and workmanship.  Chartier, therefore, under § 2308 cannot disclaim the implied warranties of merchantability and fitness for a particular purpose.  But this inability does not allow Plaintiffs to bring their manufacturing or design

23

defect claims pursuant to an implied warranty under the MMWA.  The MMWA does not aid a plaintiff's claim under state law.  *Rokicsak v. Colony Marine Sales & Serv. Inc.*, 219 F. Supp. 2d 810, 817 (E.D. Mich. 2002).  The statute "prescribes content and minimum standards for written warranties, but it is content to supplement state-law implied warranties only by prohibiting their disclaimer in certain circumstances, and affording a federal remedy for their breach."  *Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1325 (11th Cir. 2001) (internal citations omitted).  Section 2308 "does not revive a state law breach of implied warranty claim, but instead permits a buyer to pursue a federal [MMWA] claim against a supplier if the supplier disclaims an implied warranty while either making a written warranty or entering into a service contract."  *Rokicsak*, 219 F. Supp. 2d at 817.  Thus, Plaintiffs' relief is limited to Chartier's violation of § 2308(a), and the court will deny Chartier summary judgment on Plaintiffs' claim that Chartier violated § 2308(a) by disclaiming the implied warranties of merchantability and fitness for a particular purpose.

## G. Strict Products Liability (Count 8)

Plaintiffs allege strict products liability against Bombardier.  Products liability actions are subject to a three-year period of limitations, Mich. Comp. Laws § 600.5805(13), and "the period of limitations runs from the time the claim accrues," Mich. Comp. Laws § 600.5827.  The claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results."  *Id.*  As previously recognized, the "wrong" occurs on "the date on which the plaintiff was harmed by the defendant's negligent act, as opposed to the date the defendant acted

24

negligently." *Chase v. Sabin*, 516 N.W.2d 60, 63 (Mich. 1994).  Plaintiffs were harmed

by Defendants when the Jet Boat accident occurred on August 5, 2008.  The period of

limitations expired three years later on August 5, 2011, but Plaintiffs did not file their

complaint until July 31, 2012.  Therefore, Plaintiffs' strict products liability claim is time-

barred, and the court will award summary judgment.

### H. Revocation of Acceptance (Count 10)

Plaintiffs' final cause of action alleges revocation of acceptance against both

Defendants.  A purchaser's revocation of acceptance claim is barred against a

manufacturer when the parties are not in privity of contract.  *Davis v. LaFontaine*

*Motors, Inc.*, 719 N.W.2d 890, 899 (Mich. Ct. App. 2006); *Henderson v. Chrysler Corp.*,

477 N.W.2d 505, 507-08 (Mich. Ct. App. 1991).  As no privity of contract existed

between Plaintiffs and Bombardier, the court will grant summary judgment in favor of

Bombardier on Plaintiffs' revocation of acceptance action.

"Revocation of acceptance must occur within a reasonable time after the buyer

discovers or should have discovered the ground for it and before any substantial

change in condition of the goods which is not caused by their own defects."  Mich.

Comp. Laws § 440.2608(2).  A revocation of acceptance "is not effective until the buyer

notifies the seller of it."  *Id.*  The court, therefore, must determine when Plaintiffs gave

Chartier notice of revocation and whether that notice occurred within a "reasonable

time" after Plaintiffs discovered or should have discovered the grounds for revocation.

"[A]lthough notice of revocation need not be in any particular form, it must at least

inform the seller that the buyer does not want the goods and does not desire to retain

25

them." *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 378

(E.D. Mich. 1977). Plaintiffs' complaint alleges that they "notified Defendants of the

defects or nonconformities and Plaintiffs' intent to revoke acceptance . . . and demand

return of the purchase price of the Jet Boat." (Pls.' Compl. ¶ 93, Dkt. # 1.) Yet Plaintiffs

offer no evidence to support this assertion. On August 4, 2008, Plaintiffs informed

Chartier that the Jet Boat's exhaust system was experiencing problems; but Plaintiffs

did not inform, or even indicate, that they no longer wished to retain the Jet Boat. Such

conduct is inconsistent with a revocation of acceptance. *See Fargo*, 428 F. Supp. at

378-79 (finding that a purchaser did not revoke acceptance where the purchaser

complained of uncured defects but did not indicate that it no longer wanted the product

and was prepared to revoke acceptance); *cf. Kelynack v. Yamaha Motor Corp.*, 394

N.W.2d 17, 21 (Mich. Ct. App. 1986) (opining that a purchaser gave notice of revocation

when the purchaser sent the seller a letter stating he was refusing acceptance of the

product). However, filing a lawsuit for revocation of acceptance constitutes notice of

revocation. *King v. Taylor Chrysler-Plymouth, Inc.*, 457 N.W.2d 42, 45 (Mich. Ct. App.

1990); *Fargo*, 428 F. Supp. at 379 (collecting authority). Here, Plaintiffs provided notice

of revocation on July 31, 2012, when they filed the present lawsuit.

    "A buyer may revoke acceptance where the seller's breach of warranty

constitutes substantial impairment in the goods' value to the buyer." *Snyder v. Bos.

Whaler, Inc.*, 892 F. Supp. 955, 979 (W.D. Mich. 1994). As previously discussed,

Plaintiffs discovered or should have discovered the breach of express and implied

warranties on August 5, 2008, when the accident occurred, and Plaintiffs discovered or

26

should have discovered the grounds for revocation on that same date. Plaintiffs did not provide notice of revocation until almost four years after they discovered the grounds for revocation. "[W]hether a buyer has revoked within a reasonable time after he discovered or should have discovered non-conformity depends on the particular circumstances of the case." *Fargo*, 428 F. Supp. at 379. Revocation is not unreasonably delayed when the "buyer promptly notifies seller of the defects, attempts at cure are ongoing, and [the] buyer does not formally notify of revocation until it is apparent that [the] seller cannot perform repairs." *Id.* While Plaintiffs informed Chartier of an alleged defect concerning the Jet Boat's exhaust system, Chartier did not attempt to cure the defect (nor, indeed, did it acknowledge that Plaintiffs' description of the warning was indicative of a problem or defect). Plaintiffs have not offered, and the court cannot identify, evidence of any circumstances that would warrant delaying notice of revocation. As Plaintiffs waited nearly four years after the Jet Boat accident to provide notice through suit, notice was not given within a "reasonable time" under Michigan Compiled Laws § 440.2608(2). *Cf.* King, 457 N.W.2d at 45 (holding that revocation of a vehicle was given within a reasonable time when the purchaser served the seller with a complaint less than one month after the purchaser began storing the vehicle due to mechanical defects); *Kelynack*, 394 N.W.2d at 21 (finding that the purchaser gave notice of revocation within a reasonable time where the purchaser sent the seller a letter refusing acceptance of a motorcycle three days after the seller had performed repairs). The court will grant summary judgment in favor of Chartier on Plaintiffs' revocation of acceptance claim.

27

**IV. CONCLUSION**

Accordingly, IT IS ORDERED that the motion for summary judgment filed by

Defendants Bombardier Recreational Products, Inc. and BRP U.S., Inc. [Dkt. # 25] is

GRANTED.

IT IS FURTHER ORDERED that Defendant Chartier Holdings, Inc.'s motion for

summary judgment [Dkt. # 23] is GRANTED IN PART AND DENIED IN PART.  The

motion is GRANTED with respect to Counts 1, 6, 7, 9 inasmuch as it applies to the

breach of implied warranties, and 10.  The motion is DENIED with respect to Count 11

inasmuch as it applies to Chartier's violation of 15 U.S.C. § 2308(a).

IT IS FURTHER ORDERED that the court will WITHHOLD its ruling on Plaintiffs'

breach of express warranty claim alleged against Chartier under state law (Count 9) and

in violation of the Magnuson-Moss Warranty Act (Count 11).  The parties are

DIRECTED to submit supplemental briefing pursuant to Fed. R. Civ. P. 56(f)(3) and

consistent with the court's direction in Section III.D.ii., above, regarding:

> (1) Whether and how Chartier breached its express warranty that the Jet
> Boat's electronic, engine, and exhaust systems were properly
> manufactured; and
>
> (2) Whether and how the allegedly defectively manufactured systems
> were, by themselves, a proximate cause of Plaintiffs' injuries.

Plaintiffs are DIRECTED to submit a supplemental brief, which shall not exceed twenty

pages, by **March 20, 2013**.  Chartier is DIRECTED to submit a responsive

supplemental brief, which shall not exceed twenty pages, by **April 3, 2013**.  Plaintiffs

28

may file an optional supplemental reply brief, which shall not exceed five pages, by

**April 10, 2013**.

                                        s/Robert H. Cleland
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated:  February 27, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 27, 2013, by electronic and/or ordinary mail.

                                        s/Lisa Wagner
                                        Case Manager and Deputy Clerk
                                        (313) 234-5522